# EXHIBIT "A-2"

FILED
7/20/2017 9:26 AM
Donna G. Brown
District Clerk
Liberty County, TX
Nina Johnson

Cause No. CV1712317

| | | |
|---|---|---|
| Mary Beth Cessna, individually and as Executrix of the Estate of Otis Cessna, Shelia D. Tackett, and Kimberly K. Runge | § § § § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § § | LIBERTY COUNTY, TEXAS |
| v. | § § | |
| Ryobi Technologies, Inc., Techtronic Industries North America, Inc., One World Technologies, Inc., Home Depot U.S.A., Inc., and Calob Runge | § § § § § | |
| Defendants. | § § | 253rd   JUDICIAL DISTRICT |

## ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

1.   COME NOW, Mary Beth Cessna, individually and as executrix of the Estate of Otis Cessna, Shelia D. Tackett, and Kimberly K. Runge and for cause of action would respectfully show this Honorable Court as follows:

### I.
### DISCOVERY CONTROL PLAN

2.   Plaintiff hereby asserts discovery in the above-referenced cause of action is intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.4.

### II.
### PARTIES

3.   Plaintiffs Mary Beth Cessna, Shelia D. Tackett, and Kimberly K. Runge are individuals that reside in Liberty County, Texas. Mary Beth Cessna is the surviving spouse of Otis Cessna and is the executrix of his estate. Shelia D. Tackett and Kimberly Runge are the surviving daughters of Otis Cessna. Plaintiffs Mary Beth Cessna, Shelia D. Tackett, and Kimberly K. Runge collectively bring the wrongful death claims set forth below in connection with death of Otis Cessna. Mary Beth

Cessna additionally brings survival claims on behalf of Otis Cessna's estate.

4. Defendant Ryobi Technologies, Inc. ("Ryobi") is a Delaware corporation headquartered at 1428 Pearman Dairy Road, Anderson, South Carolina. Ryobi manufactures, distributes, and sells power tools and other products under the Ryobi, RIDGID, and Craftsman names. Ryobi can be served by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

5. Defendant Techtronic Industries North America, Inc. ("TTI-NA") is a Delaware corporation headquartered at 1428 Pearman Dairy Road, Anderson, South Carolina. TTI-NA manufactures, distributes, and sells power tools and other products under the Ryobi, RIDGID, and Craftsman names. TTI-NA can be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

6. Defendant One World Technologies Inc. ("One World") is a Delaware corporation headquartered at 1428 Pearman Dairy Road, Anderson, South Carolina. One World is a wholly owned subsidiary of TTI-NA and manufactures, distributes, and sells power tools and other products under the Ryobi, RIDGID, and Craftsman names. One World can be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

7. Defendant Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation, maintaining its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia. Home Depot sold the saw at issue in this petition and was at the relevant time the exclusive retail store distributor of Ryobi table saws. Home Depot can be served through its registered agent, Corporation Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701.

8. Defendant Calob Runge is an individual that resides in Liberty County, Texas.

## III.
## VENUE AND JURISDICTION

9. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

10. This Court has jurisdiction over the parties and subject matter of this lawsuit.

11. Venue for this action is proper in Liberty County, Texas, pursuant to Texas Civil Practice and Remedies Code because the incident that injured Plaintiff occurred in Liberty County. In accordance with Tex.R.Civ.Pro.47, Plaintiff are seeks damages in excess of $1,000,000.00.

## IV.
## FACTS OF THE CASE

12. On or about October 17, 2015, Calob Runge was working with his grandfather Otis Cessna on his 60's model Chevy truck. Calob needed make a rabbet on wooden planks that would be installed on the truck. In order to make the rabbet, Calob made two non-through cuts at a 90 degree angle from each other along the edge of the board. Calob was utilizing a Ryobi table saw, Model BTS211.

13. In order to make the non-through cut, Calob could not utilize the guard that came with the BTS211. It had to be removed because the guard design was such that the guard got in the way of non-through cuts. As he was finishing the second cut on a board, the machine caught the removed piece of wood propelling it past Calob and through his grandfather, Otis Cessna's, skull.

14. Otis Cessna's family rushed to his side, and a helicopter was dispatched to life-flight Otis Cessna to a hospital. His family watched him suffer in agony. Shortly before boarding the helicopter, Otis Cessna lost consciousness. He died within 48 hours of the initial tragedy.

15. The piece of wood shot from the table saw as a result of kickback, a well-known phenomenon that occurs when a the back end of a saw catches the wood it is cutting and pulls it in or propels it. A riving knife, a safety device that has been known about for decades, prevents kickback and can be used during non-through cuts. The guard that Defendants included on the table saw had some features that could prevent kickback but could not be used for non-through cuts.

16. In addition, the guard assembly that came with the BTS211 was difficult to use because it was flimsy and obstructed the operator's view of the workpiece, the saw blade, and the reference marks or scales used to align the workpiece. As a result, as Defendants were well aware, many users

removed the guards. In addition, removal of the guards required the use of tools making adjustments and maintenance complicated and difficult.

17. As explained below, Defendants were well aware of the shortcomings of their guard, but they chose not to include a riving knife or to design a user-friendly guard. In fact, at the time the table saw was purchased by Calob Runge's father, a riving knife was required for all new model table saws. Despite this, Defendants continued to market and sell table saws without this important safety feature, with the problematic guard, and without warning consumers about the risks involved in not having the now required safety device.

18. Defendants were the designer, manufacturer, tester, supplier, seller, and/or distributor of the BTS 211 table saw that killed Otis Cessna. For years, Defendants failed to utilize available safer technology. If Defendants had incorporated the available technology, Otis Cessna would still be alive.

19. Despite full knowledge of the serious safety shortcomings of their saw and guarding system, Defendants did not change their guard until they were compelled to do so, at the very last possible moment, by changed industry-wide standards intended to address these known shortcomings.

20. The BTS 211 came with a splitter that was attached to the guard. This splitter was intended to do the job performed by the riving knife, but since the splitter was attached to the guard, when the guard was removed, as necessary to perform non-through cuts, the splitter was removed also. This left the BTS 211 without *any* protection from kickbacks. The very thing that killed Otis Cessna.

21. Defendants have known for years that kickbacks can be nearly eliminated by using a riving knife. A riving knife is a small piece of metal that sits behind the blade that rises and falls with the blade so that it can be used even with non-through cuts and when there is no guard installed. Riving knives have been used for decades. In fact, in Europe, at the time Otis Cessna was writhing in pain, every table saw was required to have a riving knife.

22. In the United States, stand-alone riving knives were specifically allowed in the standards by 2005. After the change, certain more responsible manufacturers quickly adopted riving knives,

Even before the change, some manufacturers recognized the safety benefit of riving knives and adopted their use within the contours of the pre-existing standard. Riving knives were *required* for all new models by 2007. Old models without riving knives *had to* be phased out by February 2010. Calob Runge's father purchased the saw July of 2009.

23. To maximize their profits at the expense of safety, Defendants waited until the very last possible moment to install this important safety feature on their table saws. Calob's father purchased the saw very shortly before Defendants would no longer be allowed to ignore the known safety risks.

24. The BTS 211 did not include a warning concerning the increased risk of kickback created by removing the guard. Defendants did not make consumers aware of the risks posed by the saw that Defendants continued to market without recognized safety devices.

25. Additionally, the BTS 211 was defective because its design caused it to vibrate excessively during operation.

26. Otis Cessna was a beloved member of his family. He was a unique individual that created positive relationships with those who knew him. Otis Cessna's family is incredibly tight knit. They live on the same acreage so that they can enjoy each other's companionship. Otis Cessna's untimely death has been incredibly difficult fort Plaintiffs and the rest of their family.

27. Had Defendants followed the lead of other responsible manufacturers and not put profits over people in continuing to sell a dangerous product, Otis Cessna would not have suffered horrific injuries, and he would be with his family today.

## V.
## CLAIMS

*Negligence and Gross Negligence Against TTI-NA, One World, Ryobi, and Home Depot*

28. Plaintiffs incorporate and re-allege the above paragraphs as if fully set forth herein.

29. Defendants proximately caused the incident complained of herein through the enumerated negligent acts and/or omissions:

A.  Failing to provide a user friendly guard;

B.  Failing to warn concerning the lack of a user friendly guard;

C.  Failing to include a riving knife;

D.  Failing to warn about the lack of a riving knife;

E.  Failing to address the known and objectively grave risk of kickback given the saw's defective design;

F.  Failing to warn of the known and objectively grave risk of kickback given the saw's defective design;

G.  Failing to correct the excessive movement of the saw during use;

H.  Failing to recall the machine and/or warn consumers after notice of its defects;

I.  Failing to address the known and objectively severe risk of kickbacks during non-through cuts; and

J.  Other acts deemed negligent and grossly negligent.

30. Defendants owed a duty consistent with the foregoing and breached each of those duties. These breaches were the cause in fact and proximate cause of Otis Cessna's death.  As a result of Defendants' negligence, Plaintiffs have suffered damages as set forth below.  Plaintiff breached these duties in the face of a risk they knew.  The degree of risk Defendants subjected Otis Cessna to was extreme considering the probability and magnitude of the harm the risk posed. As a result, Plaintiffs are entitled to punitive damages.

***Products Liability – Design Defect Against TTI-NA, One World, Ryobi, and Home Depot***

31. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

32. Defendants are strictly liable to Plaintiffs.  Defendants were in the business of designing, manufacturing, and producing table saws.  The Ryobi BTS 211 table saw was intended to and did reach its user without any change in its condition.  The table saw was in a defective, unreasonably

dangerous condition when it left the hands of the Defendants. The defective, unreasonably dangerous condition was the producing cause of the injuries that led to this lawsuit. As indicated above, the table saw came with a cumbersome unusable guard that was regularly discarded. The table saw lacked a riving knife. The table saw vibrated excessively.

33. As a result of the defective design of the table saw, Plaintiffs suffered damages as set forth below.

34. In allowing this defective design, Defendants knowingly ignored an extreme risk of harm when considering the probability and magnitude of that harm. As a result, Defendants should pay punitive damages.

*Products Defect – Marketing Defect Against TTI-NA, One World, Ryobi, and Home Depot*

35. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein

36. Defendants failed to adequately warn of their product's potential and specific dangers. The failure to warn resulted in an unreasonably dangerous product.

37. Defendants failed to warn about their product's defective design. Defendants also failed to warn that the product lacked a proper guard, failed to warn that the lacked a riving knife (although other available machines had it and it was required for all new designs), and failed to warn of the known and objectively grave risk of kickback given the saw's defective design.

38. Defendants' failure to warn was the cause of Plaintiffs' damages as set forth below.

39. In failing to warn, Defendants knowingly ignored an extreme risk of harm when considering the probability and magnitude of that harm. As a result, Defendants should pay punitive damages.

*Negligence Against Calob Runge*

40. In addition and/or in the alternative, Calob Runge was negligent in operating the BTS 211 table saw. Plaintiffs suffered damages as a result of Calob Runge's negligence.

## VI.
## WRONGFUL DEATH DAMAGES

41. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein

42. Otis Cessna is survived by his loving wife, his two daughters, his grandchildren, and his great-grandchildren. He had been married to Plaintiff Mary Beth Cessna for 50 years at the time of his death. In fact, they had celebrated their 50th wedding anniversary just days before the incident. He loved spending time with his family. Otis Cessna loved to work and to create things for his family. He was also active and had recently returned from a trip to Yellowstone with his wife when the accident occurred. He will be sadly missed by many.

43. Plaintiff Mary Beth Cessna was married to Otis Cessna at the time of his death. They had been together so many years that they were inseparable. Mary Beth Cessna still cannot talk about the events that occurred on the day that her husband was killed. Mary Beth Cessna relied on Otis Cessna for emotional and spiritual strength and household help. Mary Beth Cessna will have to live the rest of her life without the partner she loved as a result of Defendants' reckless greed.

44. In addition to leaving a loving wife, Otis Cessna's sudden, unexpected and preventable death left Plaintiff's Shelia Tackett and Kimberly Runge without their father. Otis Cessna was the emotional backbone for the entire family.

45. As a direct and proximate result of the negligence of Defendant, as described above, there has been a sudden and unexpected severance of the marital, familial, and parental relationship between Plaintiffs and Otis Cessna.

46. Plaintiffs specifically request the Court and Jury to determine the amount of loss incurred, not only from a financial standpoint, but also in terms of mental anguish and freedom from grief and worry. From the date of the incident in question to the time of the trial of this case, the elements of damage to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiffs are as follows:

A. the mental anguish Plaintiffs have suffered in the past and in the future;

B. the amount of reasonable medical expenses necessarily incurred in the past and in the future for the treatment of Plaintiffs' mental pain and anguish;

C. Intervenors' loss of companionship and society from the date of the incident to the

time of trial, including, but not limited to the loss of the positive benefits flowing from the love, comfort, companionship, and society that the deceased's widow and children, in reasonable probability, would have received from decedent, Otis Cessna had he lived.

D.     Plaintiffs' loss of inheritance;

E.     Plaintiffs' pecuniary losses, including, but not limited to the loss of the care, maintenance, support, services, advice, counsel, that Plaintiffs in reasonable probability, would have received from decedent Otis Cessna had he lived.

## VII.
## SURVIVAL DAMAGES

47. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein

48. Otis Cessna died as a direct and proximate result of Defendants negligence.  Prior to his death, Otis Cessna suffered physical pain, mental anguish, and trauma for which his estate now sues.

49. In addition, the Estate of Otis Cessna suffered funeral and burial expenses, medical bills, and emergency transport costs as a result of the incident.

50. Mary Beth Cessna is the executrix of the estate and brings the above claims on behalf of the estate for the compensatory damages set forth above.

## VIII.
## REQUEST FOR DISCLOSURE

51. Pursuant to Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service for this request, the information or material described in Rule 194.2.

## IX.
## JURY DEMAND

52. Plaintiffs demand a jury trial.

## X.
## PRAYER FOR RELIEF

53. Plaintiffs pray that citation issue and be served upon Defendants requiring them to appear and answer. Plaintiffs seek damages in excess of the minimum jurisdictional limits of this court, monetary relief in excess of $1,000,000, pre-judgment and post-judgment interest, court costs, wrongful death damages as set forth above, punitive damages, and all such other relief to which Plaintiff shows himself justly entitled.

Respectfully submitted,

WILLIAMS, KHERKHER, HART, BOUNDAS, L.L.P.

By: /s/ Cesar Tavares
    JIM HART
    State Bar No. 09147400
    ELOY E. GAITAN
    State Bar No. 00790730
    CESAR TAVARES
    State Bar No. 24093726
    8441 Gulf Freeway, Suite 600
    Houston, Texas  77017-5051
    (713) 230-2200
    (713) 643-6226 [facsimile]
    PIDEPT@williamskherkher.com



Cause No.

| | | |
|---|---|---|
| Mary Beth Cessna, individually and as Executrix of the Estate of Otis Cessna, Shelia D. Tackett, and Kimberly K. Runge | § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | LIBERTY COUNTY, TEXAS |
| v. | § § | |
| Ryobi Technologies, Inc., Techtronic Industries North America, Inc., One World Technologies, Inc., Home Depot U.S.A., Inc., and Calob Runge | § § § § | |
| Defendants. | § | ____ JUDICIAL DISTRICT |

## PLAINTIFFS FIRST SET OF DISCOVERY REQUESTS AND REQUESTS FOR DISCLOSURE TO MANUFACTURER DEFENDANTS

**TO: DEFENDANTS Ryobi Technologies, Inc., Techtronic Industries North America, Inc., and One World Technologies, Inc. through their registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.**

Pursuant to the Texas Rules of Civil Procedure, Plaintiff(s) serve this, their First Set of Discovery Requests and Requests for Disclosure, to Defendant(s). Defendant(s) must respond to all discovery and requests for disclosure not more than 50 days after service at Plaintiff(s)' attorneys' office located at 8441 Gulf Freeway, Suite 600, Houston, Texas 77017.

Respectfully submitted,

**WILLIAMS, KHERKHER, HART, BOUNDAS, L.L.P.**
By: */s/ Cesar Tavares*
    **JIM HART**
    State Bar No. 09147400
    **ELOY E. GAITAN**
    State Bar No. 00790730
    **CESAR TAVARES**
    State Bar No. 24093726
    8441 Gulf Freeway, Suite 600
    Houston, Texas 77017-5051
    (713) 230-2200
    (713) 643-6226 [facsimile]
    PIDEPT@williamskherkher.com

## A. Instructions

1.      Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

2.      Whether responsive to an interrogatory inquiring about documents or to a request for production of documents and things, for a document that once existed but no longer exists or that cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

      a.  When identifying the document, you must state the following:

        (1) The nature of the document (e.g., letter, handwritten note).

        (2) The title or heading that appears on the document.

        (3) The date of the document and the date of each addendum, supplement, or other addition or change.

        (4) The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

      b.  When identifying the person, you must state the following:

        (1) The full name.

        (2) The present or last known residential address and residential telephone number.

        (3) The present or last known office address and office telephone number.

        (4) The present occupation, job title, employer, and employer's address.

3.      As indicated in the definitions section below, these requests specifically include all electronically stored information.  Electronically stored information should be produced in its native form.  If the native form of electronically stored information is not readable by software that is generally used and available in an office, please produce copies of this information in a readable form.  If voluminous electronic records need to be searched to identify discoverable information, please contact our office to discuss a search protocol and potential search terms.

4.      In accordance with the Texas Rules of Civil Procedure, for any Request for Admission that you cannot admit or deny, please set forth in detail the reasons that you cannot admit or deny the request.

## B. Definitions

The following definitions shall have the following meanings, unless the context requires otherwise:

1. "Plaintiff" or "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2. "You" or "your" means the Defendant(s) to whom this request is addressed, their successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of said Defendant(s), or their successors, predecessors, divisions, and subsidiaries.

3. "Document" means all written, typed, or printed matters, and all magnetic, electronic, or other records or documentation of any kind or description in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of the action.

4. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

5. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

6. "Communication(s)" means any oral or written communication including electronic forms of communication.

7. "Incident", "occurrence", or "accident" refers to the transaction, occurrence, or series of transactions and occurrences that led to Plaintiff(s) injuries discussed in Plaintiff(s) Petition and any Amended Petition.

8. "Defendant driver" refers to the individual named in the petition as the operator of your vehicle or any other individual operating your vehicle that was involved in the incident at the time of the incident.

9. "Identify@ as to a natural person means to state that person=s full name, current employer, current business address and phone number and current residential address and phone number. As to a corporation, state the full name of the corporation, the full name of its registered agent along with the registered agent=s current business address and phone number. As to a partnership, state the full name of the partnership, the full name of the general partner along with the general partner's current business address and phone number. As to a document,

describe it with sufficient particularity so that a person who has never seen it can request its production with sufficient particularity in accordance with the Texas Rules of Civil Procedure. Include in your identification of any document its date, author, recipients, and a brief description of its subject matter, and the name and current address of the custodian of those documents. If the document has been produced, please state its Bates number. As to a test or study, state the name and title of the test and/or study, the author(s), a general description of the scope of the test and/or study, the individual(s), organization(s) and/or entities who conducted the test and/or study, the location of the test and/or study, the date the test and/or study was completed, the identity of all documents which refer to the test and/or study, any and all publications in which the test and/or study was published, the volume and edition of the publication, the present custodian of the test and/or study, the raw data used and/or relied upon in the test and/or study, and the results of the test and/or study. As to a business, state the correct name of the business entity, its business organization (corporation, partnership, etc.), the mailing address of its principle place of business in Texas, if any and of its home office, the name and address of its agent for service in Texas, if any, and of its agent for service in the jurisdiction(s) of its home office and of its incorporation (or other organization).

10. "Product at issue" refers to the Ryobi Table Saw model number BTS211

## INTERROGATORIES TO DEFENDANT(S)

Interrogatory 1: Please identify the individuals that occupied the following roles during the development and marketing of the product at issue:

1. Company president
2. Product safety engineer
3. Chief engineer
4. Person in charge of sales, marketing and advertising the product at issue
5. Person in charge of warnings, labeling, and creating and maintaining user and service manuals
6. The person in charge of collecting accident data

RESPONSE:

Interrogatory 2: If you believe that the incident was caused by anything other than your negligence, please identify all other events or persons you contend caused the incident. This interrogatory encompasses any actions by the Plaintiff(s) and/or third parties to this litigation.

RESPONSE:

Interrogatory 3: With regard to table saws manufactured or designed by you, please describe all efforts you undertook to incorporate a riving knife that could be used independently of other parts of a guard assembly and when those efforts took place.

RESPONSE:

Interrogatory 4: Please identify all accidents or near-misses that you are aware of involving table saws manufactured or designed by you with guard assemblies that are the same or substantially similar to the guard assembly on the product at issue that involved kickback.

RESPONSE:

Interrogatory 5: For any affirmative defense in your pleadings, please state all facts upon which you base that affirmative defense and identify the persons with knowledge of those facts.

RESPONSE:

Interrogatory 6: Please disclose the net worth of each Defendant.

RESPONSE:

Interrogatory 7: For the guard that came with the product at issue, please identify all safer alternative designs that you are aware of that were available in 2009.

RESPONSE:

Interrogatory 8: Please describe, in detail, your role in the development of the guard that replaced the guard that came with the BTS211.

RESPONSE:

Interrogatory 9: Please describe, in detail, your role in the development of the 6th and 7th editions of UL 987.

RESPONSE:

Interrogatory 10: Please identify every standard that you considered when designing the guard that came with the BTS211.

RESPONSE:

Interrogatory 11: Please provide all information available that is specific to the BTS211 serial number XX094638932 including when the saw was manufactured, where it was manufactured, the cost to manufacture the saw.

RESPONSE:

Interrogatory 12: Please identify the total number of table saws sold by you with a guard that is the same or substantially similar to the guard at issues, the price you sold the saws for, and the profit margin on the saws.

RESPONSE:

Interrogatory 13: Please disclose the marginal cost of adding a riving knife to the BTS211.

RESPONSE:

Interrogatory 14: Please identify every risk assessment analysis you have completed for any table saw developed and manufactured by you.

RESPONSE:

Interrogatory 15: For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert, please state or provide all of the discovery authorized by the Texas Rules of Civil Procedure (See Rule 192.3(e).) This will include a list of cases in which the expert has provided testimony either by deposition or at trial for the last 4 years and all witness fees paid to the expert over that period of time. If a list is not available, the request requires at a minimum disclosure of all times the expert has been retained by the law firm(s) representing Defendant(s) and the compensation paid to the expert in connection with those retentions for the last five years.

RESPONSE:

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

REQUEST 1: Please produce the complete design file for the product at issue.

RESPONSE:

REQUEST 2:  Please produce all drawings and drawing revisions for the product at issue

RESPONSE:

REQUEST 3:   Please produce all marketing and sales materials, including originals and revisions, for the product at issue, including without limitation:

- User or operator's manuals
- Repair manuals
- Service manuals
- Warranty cards, pamphlets, and information
- Advertising and sales literature
- Sales videos
- Sales pamphlets
- Sales writings
- Sales training

RESPONSE:

REQUEST 4:  The complete labeling and warning files.

RESPONSE:

REQUEST 5:  All accident reports and records.

RESPONSE:

REQUEST 6:  All materials related to testing of the product at issue or any predecessor product.

RESPONSE:

REQUEST 7: All engineering change notices and change orders

RESPONSE:

REQUEST 8: The parts list for the product at issue

RESPONSE:

REQUEST 9: All documents and/or communications concerning actual or proposed recalls, retrofits, trade-in programs, or customer notifications related to any table saw with a guard assembly that was the same or substantially similar to the guard utilized on the product at issue.

RESPONSE:

REQUEST 10: Please produce all documents and/or communications that support the following statement, made by you in your patent application US20040255745A1:

> "Many types of riving knives and guard assemblies have been used in the past. However, these assemblies have often been difficult to use because they are typically quite flimsy and obstruct the operator's view of the workpiece, or the saw blade, or the reference marks or scales used to align the workpiece. As a result, many guards are often removed which in turn results in a higher probability of accidents and injuries. Additionally, the removal of guards from the table saw often requires the use of tools making the adjustment or maintenance of the saw blade and riving knife complicated and difficult."

RESPONSE:

REQUEST 11: Please produce all documents and/or communications regarding lack of kickback protection when the guard that came with the product at issue is removed.

RESPONSE:

REQUEST 12: Please produce all documents and/or communications related to any accident or near miss involving kickback on a table saw that came with a guard that was the same or substantially similar to the guard used with the product at issue.

RESPONSE:

REQUEST 13: Please produce all documents and/or communications related to any attempt to incorporate a riving knife that could be used independently of other parts of a guard assembly on any table saw manufactured or designed by you.

RESPONSE:

REQUEST 14: Please produce the documents numbered 1-826, 955-56, 959-965, 1000-1001, 1200-1218, and 1224-1252, and 1254-1257 on the attached Plaintiff's Amended Exhibit list from *Thull v. Techtronic Industries Co., Ltd. et al.*, 011-CV-02368-PJS-LIB, 10/23/2014 (Dist. Minn.)

RESPONSE:

REQUEST 15: Produce all documents related to your net worth including current balance sheets and balance sheets for the last three years as well as current profit and loss statements and profit and loss statements for the last three years.

RESPONSE:

REQUEST 16: Please produce all documents related to Plaintiff(s) in your possession including any documents obtained in connection with this litigation.

RESPONSE:

REQUEST 17: Please produce all documents that you have obtained using any authorization from any Plaintiff.

RESPONSE:

REQUEST 18: Please produce all medical records in your possession related to Plaintiff(s)

RESPONSE:

REQUEST 19: Please produce copies of all insurance policies that were in effect at the time of the incident that makes the basis of this lawsuit.

RESPONSE:

REQUEST 20: Produce any documents or materials of any type concerning evidence of a conviction to be used concerning Plaintiff(s), any party, fact witness, or expert witness named in responsive discovery by any party. This Request incorporates and specifically refers to the names of any party, fact witness, or expert witness as if fully set forth herein. Evidence of a conviction includes, but is not limited to:

   a. Names of the person convicted;
   b. Offense for which he was convicted;
   c. Date of such conviction;
   d. Court of such conviction; and
   e. Sentence involved.
   (See Rule 609(f), Texas Rules of Civil Evidence).

RESPONSE:

REQUEST 21: All correspondence, memoranda, statements, tape recordings (or transcripts thereof), wire reports, investigation reports, close out reports, summaries or any other documents (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotaped recordings, and any other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form), as well as any other tangible things which were prepared or received by you, your agents, servants, employees, or representatives, (including, but not limited to insurance carriers, adjusting companies or investigators) before you had a good faith belief to reasonably anticipate that there was a substantial chance that litigation would ensue in this case, which reflect the following:

a. Any indemnity reserve relating to the claimed injuries of Plaintiff(s);

b. Any investigation performed by you or on your behalf concerning Plaintiff(s), or any person named in responsive discovery by any party as a person with knowledge of relevant facts or as an expert, including, but not limited to, photographs, recorded statements, videotapes, background, criminal, or credit record checks, surveillance, following, eavesdropping, or interviewing persons;

c. Evaluations or analyses of the character or personality of Plaintiff(s), or any person named in responsive discovery of any party as a person with knowledge of relevant facts or as an expert witness, or an assessment of their abilities as a witness;

d. The settlement value or potential judgment of this case; and

e. Whether some other person, party, or entity other than Plaintiff(s) caused or contributed to the occurrence in question.

RESPONSE:

REQUEST 22: Please produce the following concerning your testifying experts:

a. The experts' current resume and bibliography;

b. A list of matters for which the expert has given testimony either in court or by deposition for the last five years;

c. All documents and tangible things that the expert will rely on in rendering his opinions;

d. All documents, tangible things, reports, models, or data compilations provided to the experts and communication of any facts or other data that the experts have or will rely on in rendering opinions;

e. Any documents showing the experts' opinions or mental impressions formed in connection with this case;

f. Any communication indicating assumptions that the expert has been asked to make; and

g. All deposition transcripts and videos in your possession related to the expert for the last five years.

RESPONSE:

REQUEST 23: Please produce all documents, electronic information, and tangible items that you have in your possession, custody, or control and you may use to support your claims or defenses.

RESPONSE:

REQUEST 24: Please produce all information you receive pursuant to any subpoenas, medical record requests, or similar item issued in connection with this litigation.

RESPONSE:

REQUEST 25: Please produce all documents indicating the incremental cost of adding a riving knife to table saws manufactured by you.

RESPONSE:

REQUEST 26: Please produce all documents indicating the incremental cost of using the current modular guard as compared to the guard that was used on the BTS 211.

RESPONSE:

REQUEST 27: Please produce all documents related to any testing of the effectiveness of a riving knife in preventing kickback.

RESPONSE:

REQUEST 28: Please produce all documents related to your role in the development of the 6th and 7th editions of UL 987.

RESPONSE:

REQUEST 29:  Please produce all documents related to your role in the development of the modular guard currently used on table saws manufactured by you.

RESPONSE:

REQUEST 30:   Please produce all documents that are unique to the table saw at issue, BTS211 serial number XX094638921.

RESPONSE:

REQUEST 31:  Please produce all documents related to any request by you to deviate from the UL Standard in development of a table saw, including a request for a significant interpretation.

RESPONSE:

## REQUESTS FOR ADMISSION

REQUEST 1: Admit that the product at issue was defective.

RESPONSE:

REQUEST 2: Admit that the guard that came with the product at issue was defective.

RESPONSE:

REQUEST 3: Admit that you failed to provide adequate warnings with the product at issue.

RESPONSE:

REQUEST 4: Admit that there was an alternative design for the guard to the product at issue that would have been safer.

RESPONSE:

REQUEST 5: Admit that the guard that came with the product at issue was unreasonably dangerous

RESPONSE:

REQUEST 6: Admit that use of the product at issue without the guard was foreseeable.

RESPONSE:

REQUEST 7: Admit that you were aware that users of the product at issue frequently removed the guard because if impaired their ability to work on the machine.

RESPONSE:

REQUEST 8: Admit that this accident was avoidable.

RESPONSE:

REQUEST 9: Admit that use of the product at issue for none-through cuts was foreseeable.

RESPONSE:

REQUEST 10: Admit that the product at issue was designed so that it could perform none-through cuts.

RESPONSE:

REQUEST 11: Admit that you were negligent in your design of the guard that came with the product at issue.

RESPONSE:

REQUEST 12: Admit that you should have recalled the BTS211 table saw.

RESPONSE:

## REQUESTS FOR DISCLOSURE

Please disclose the following:

   (a) the correct names of the parties to the lawsuit;
   (b) the name, address, and telephone number of any potential parties;
   (c) the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);
   (d) the amount and any method of calculating economic damages;
   (e) the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;
   (f) for any testifying expert:
      a. the expert's name, address, and telephone number;
      b. the subject matter on which the expert will testify;
      c. the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to your control, documents reflecting such information;
      d. if the expert is retained by, employed by, or otherwise subject to your control:
         i. all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
         ii. the expert's current resume and bibliography;
   (g) any indemnity and insuring agreements described in Rule 192.3(f);
   (h) any settlement agreements described in Rule 192.3(g);
   (i) any witness statements described in Rule 192.3(h);
   (j) in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;
   (k) in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party;
   (l) the name, address, and telephone number of any person who may be designated as a responsible third party